UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20340-CR-WILLIAMS(s)

**UNITED STATES OF AMERICA,**

vs.

**MASPHAL KRY,**

       **Defendant.**

                                    /

### GOVERNMENT'S RESPONSE IN OPPOSITION
### TO MOTION TO CONDUCT DEPOSITIONS

Pursuant to this Honorable Court's Order of July 28, 2023 [D.E.-158], the United States of America hereby responds in opposition to defendant's Motion to Conduct Depositions Pursuant to Fed. R. Crim. P. 15 [D.E.-157], and would show:

### BACKGROUND

Defendant Kry seeks to memorialize the testimony of three individuals residing in Cambodia, who are identified as employees of the Royal Kingdom of Cambodia. A request by the defense for "safe passage" letters was rejected by the United States due to the scope of the assurances sought by those individuals. Defense counsel has advised the Court that the three are uniformly unwilling to travel to the United States to testify in support of their colleague, while willing to be deposed only in Phnom Penh, Cambodia. D.E.-157 n. 2 (and accompanying text).

On Motion, the defense asserts generally that two of the witnesses will testify in support of the defense theory that KRY, as Deputy Director of the Department of Wildlife and Biodiversity

1

within the Forestry Administration was limited in his authority and in any event, was authorized to engage in whatever trafficking and delivery of long-tailed macaques he may have engaged in by prior authorization of his agency. The third witness appears to be proffered more as an expert on Cambodian law than a fact witness. Identified only as an "Attorney to the Royal Government," he apparently will discuss the organization of the Cambodian government and its agencies and opine that KRY was authorized by the Cambodian government to collect and deliver the non-human primates to a breeding farm in Pursat, Cambodia as charged. Curiously, the defendant, with respect to each witness, suggests that the witness can provide material testimony testify and opine as to what KRY *knew* or *believed* with respect to KRY's activities in furtherance of the capture and delivery of the LTMs to the Pursat "breeding" facility. Such testimony regarding the subjective knowledge and belief of an individual is clearly incompetent and precluded by the Federal Rules of Evidence.[1]

## DISCUSSION

Rule 15 of the Federal Rules of Criminal Procedure permits District Courts to authorize the taking of a deposition where exceptional circumstances exist. A court's decision to authorize or deny such deposition testimony is reviewed under an abuse of discretion standard. *United States v. Alexander*, 782 F.3d 1251 (11th Cir. 1995); *United States v. Thomas*, 62 F.3d 1332 (11th Cir. 1995).

The moving party bears the burden of demonstrating exceptional circumstances exist. *United States v. Drogoul*, 1 F.3d 1546 (11th Cir. 1993). To warrant a deposition, the moving party must

---

[1] Witness Sovannary is proffered to testify that". . . neither Mr. Kry, nor any other Cambodian official, could know whether the monkeys set for export were either captive bred or wild-caught." D.E.-157 at 8. Witness Sopheaktra's proffered "material" testimony would be that: "(i) Mr. Kry could not have known that the animals he delivered to VBRC would be exported to the United States . . . . " *Id*. Witness Soveacha's is ostensibly relevant to whether Mr. Kry " . . . believed he was authorized by the Cambodian government to collect and deliver the long-tailed macaques to VBRC."

demonstrate that 1) the witness is unavailable; 2) that injustice will otherwise result without the material testimony a deposition could provide; and 3) countervailing factors would make the deposition unjust to the nonmoving party. *United States v. Ramos*, 45 F.3d 1519 (11th Cir. 1995). These are addressed, seriatim, below.

1) **Witness availability.**

"A potential witness is unavailable for purposes of Rule 15(a) . . . whenever a substantial likelihood exists that the proposed deponent will not testify at trial. In that situation, justice usually will be served by allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary." *Drogul*, 1 F.3d at 1553 (explaining that witnesses who are foreign nations and located outside of the United States are outside the subpoena power of the courts and was a basis to grant a Rule 15(a) deposition request). Despite the fact that the three proposed witnesses reside abroad, and foreign nationals described as officials of the Royal Kingdom of Cambodia, these witnesses were previously prepared to appear in person in Miami to testify at trial. The Government of Cambodia has been openly supporting Kry's defense in this case. However, the defense now asserts that the proposed witnesses are unavailable. Defense counsel has indicated that unnamed counsel for the witnesses has communicated that the witnesses are now willing only to be deposed in the Cambodian capital. But for the United States' unwillingness to provide "safe passage letters," the proposed witnesses would have appeared in Miami to testify at trial; thus the "unavailability" of the proposed witnesses is self-imposed.

2) **Injustice arising from the absence of material testimony.**

Less clear is the materiality of much of the testimony proffered in support of the witness depositions. As noted, supra, a significant portion of the testimony of the witnesses will likely be

inadmissible under Rule 701, Fed. R. Evid., since the subjective knowledge and intent of a defendant, what "Kry . . . [or] any other Cambodian official, could know" are not the subject of a witness' perception, and any testimony regarding statements by Kry relevant to those issues would be rank hearsay and precluded under the party opponent provision of Rule 801, Fed. R. Evid. Inadmissible evidence is simply not material.

        The recitation on Motion with respect to witness Sovannary identifies her primarily as a custodian of records to authenticate records with which the Court is already familiar, related to MAFF authorization to VBRC to collect up to 2, 000 non-human primates. Sovannary is also purported to be able to testify to her and other employee practices in conducting breeding farm inspections. Such testimony, unless directed to her personal knowledge of Kry's practices and procedures would be immaterial and irrelevant to the case.  Likewise, the claim that she would testify as to what Kry "reasonably believed" is incompetent evidence under the Federal Rules.

        Witness Sopheaktra's testimony regarding the agency's authority *may* have relevance to the defense and be material. The claim that Sopheaktra can "provide material evidence that Kry could not have known the animals he delivered to VBRC would be exported to the United States" is inapposite for the same reason noted, supra, with respect to witness Sovannary.

        Witness Soveacha, identified as an attorney for the Cambodian government, is in fact more properly characterized as an expert witness as he will apparently opine on the scope, nature, and impact of Cambodian law. Although he has not been so designated, and the defense has yet to comply with the government's reciprocal request for expert disclosure, after having responded substantively on July 11, 2023, to the defense request made pursuant to Rule 16(a)(1)(G), Local Rule 88.10(o)(3)(A), and the Discovery Order entered herein, D.E.-46. With appropriate compliance with

4

the rules of Court, this witness' testimony would appear to meet the second prong of the Rule 15 standards.

### 3) Countervailing Factors Render The Depositions As Proposed Unjust.

It has been recognized by the courts that reasonable security concerns may render unjust an order requiring the prosecutors and investigative agents in a case to travel to a particular location to take depositions – even in the face of otherwise demonstrably "exceptional circumstances." *United States v. Khan*, 794 F.3d 1288, 1306 (11th Cir. 2015); see also *United States v. Ramos*, 45 F.3d 1519, 1524 (11th Cir. 1995)(*Ramos I*)(where safety concerns existed, alternative means of taking the deposition could suffice, such as written interrogatories).

Security concerns are present in the instant case. Counsel for defendant Kry, on August 2, 2023, in writing to officials within the Criminal Division of the Department of Justice, sought the dismissal of the indictment against their client, asserting that federal agents:

> " . . . executed an unlawful covert investigation in Cambodia, without the knowledge of law enforcement agencies in Cambodia and with the obvious aim of prosecuting Cambodian officials . . ." and that " . . . under the direction of an Assistant U.S. Attorney in Miami, conducted a multi-year intelligence gathering scheme without the consent or knowledge of [the Cambodian government]." The correspondence further asserts " . . . all of the circumstances suggest that the USFWS's agents, without authorization, were engaged in a program of espionage against a foreign government . . . ."[2]

---

[2] Defendant's characterizations, even were they correct, offer no cognizable claim. The Supreme Court has held that the government's extraterritorial conduct (or misconduct), provides no basis to challenge a subsequent trial in the United States. *United States v. Alvarez-Machain*, 504 U.S. 655,662 (1992)( U.S. government's abduction of a defendant from Mexico has no bearing on trial court's jurisdiction in the absence of an express treaty provision). The Eleventh Circuit found the reasoning in *Alvarez-Machain* broad enough to encompass the circumstances of the arrest by U.S. military personnel of a de facto foreign head of government, outside the U.S., and the subsequent rendering of that person into the jurisdiction of a U.S. Court. *United States v. Noriega*, 117 F.3 1206, 1213 (11th Cir. 1997). No precedent know to the government would suggest that conducting an investigation culminating in an arrest within the United States would warrant dismissal of an indictment.

Counsel for Kry had previously advised that unnamed "high Cambodian officials" had questioned the conduct of the investigation and characterized it, as in the foregoing excerpt, as "espionage."

From the position stated by the defense, it is readily apparent that travel to Cambodia by the prosecuting team would be problematic at best.

In *Khan*, a federal grand jury brought terrorism-related charges against the defendant. Upon conviction, a lengthy term of imprisonment was imposed. *Id.* at 1292. Six months before the scheduled trial Khan moved the court to conduct Rule 15 depositions in Pakistan on an unindicted coconspirator and a fact witness. He asserted in language with a familiar ring that the witnesses were unavailable to testify in the United States and would provide testimony highly material to his defense. *Id.* at 1306. As the Eleventh Circuit noted:

> Federal Rule of Criminal Procedure 15 offered Khan a mechanism to obtain their testimony. That rule permits depositions in criminal cases "in order to preserve testimony for trial" because of "exceptional circumstances and in the interest of justice." Fed.R.Crim.P. 15(a)(1). Such circumstances exist when (1) the witnesses are unavailable to testify at trial, (2) their testimony is material, and (3) countervailing factors do not "render taking the deposition[s] unjust to the nonmoving party." *United States v. Ramos*, 45 F.3d 1519, 1522–23 (11th Cir.1995). In his Rule 15 motion, Khan argued that these three factors counseled in favor of permitting the depositions to go forward.

*Id.*

Collateral issues regarding prior approval of the foreign government, acquisition of visas, acquisition of diplomatic passports, and the significant logistical challenges of such depositions all entered into the District Court's analysis in *Khan*. Notably, the witnesses could not enter the U.S. Embassy for the depositions since they were under INTERPOL arrest warrants and would be taken

into custody for extradition.[3] The Embassy being unavailable, private locations were even more problematic because it would render the American officials potential targets of Taliban sympathizers. The government also objected, arguing the strength of the exceptional circumstances shown by the defense balanced poorly against the concern that depositions in a foreign country lack any sanction for perjury and are inherently suspect. *United States v. Alvarez,* 837 F.2d 1024, 1029 (11th Cir.),*cert. denied*, 486 U.S. 1026 (1988).

Earlier evidentiary hearings by the *Khan* court unsuccessfully explored the possibility of employing Letters Rogatory. Ultimately, despite the proffered security concerns, the trial court granted Khan's Rule 165 Motion, but recognized, in light of the legitimate security concerns, that it would be unjust to require the depositions to be conducted by the prosecution team in Pakistan. *Id*. at 1307-08. The *Khan* court's compromise, with several detailed conditions precedent, was live video-conferenced testimony from Pakistan, with cross-examination to be conducted from the courtroom by the prosecutors in Miami. While the Court's concerns proved valid, and the effort was ultimately cut-off after the testimony of a single Pakistani-based witness, further attempts to secure the depositions in a third-country, or alternatively the United States, failed. *Id*. at 1310-11.

Although security concerns as a countervailing factor, alone, may be insufficient to warrant a denial of a Rule 15 Motion, *Ramos I,* 45 F.3d at 1524-25, other means of securing the testimony can be ordered by the trial court. *United States v. Ramos*, 179 F.3d 1333, 1519, 1522–23 (11th

---

[3] The United States is unaware of any investigations or pending charges against the proposed defense witnesses herein and has confirmed there are no INTERPOL notices naming them, and no provisional arrest request initiated by any U.S. agency. Unlike the three witnesses herein, the three witnesses in *Khan* were all fugitive codefendants in that case.

Cir.1999)(*Ramos II*)(upon remand from Ramos I, in a procedure that sufficed for subsequent review, the trial court ordered the deposition proceed by simultaneous videoconferencing, with counsel for all parties present in Miami). Ultimately, it is clear from the *Ramos II* and *Kahn* decisions that this Honorable Court, if otherwise satisfied, can craft methods of memorializing testimony pursuant to Rule 15 other than through a traditional face-to-face deposition.[4]

Based on the precedent in the Eleventh Circuit, and the fore-going discussion, the United States would propose that the witness needs of the defense be met by real-time videoconference testimony at trial. This option offers efficiency to the process and secures the rights of the defendant while simultaneously addressing the legitimate security concerns in this matter. It obviates the need to produce a deposition that would inevitably be replete with objections and other content not properly before the jury. The editing of the proposed witness depositions would consume considerable time and resources and likely further delay a trial in this matter. Likewise, traditional depositions, wherever held, would entail considerable time and expense in planning, acquisition of necessary approvals from the government of the chosen location, the securing of any required passports and visas, travel issues, confrontation clause concerns. By minimizing theses collateral issues, such a process would also allow the case to proceed on its current schedule, as all parties have indicated is their strong preference.

## **CONCLUSION**

Based upon the foregoing, the United States respectfully submits that defendant's Motion to Conduct Depositions Pursuant to Fed. R. Crim. P. 15 be denied as proffered, and an alternative

---

[4] Collateral issues can also be addressed through a carefully crafted order. *See United States v. Mueller,* 74 F.3d 1152, 1156-57 (11th Cir. 1996).

methodology be directed by this Honorable Court, to include real-time direct and cross-examination of the witnesses before the jury to be empaneled in this matter[5].

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  /s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney
Florida Bar No. 0273538
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9413

By:  /s/ Emily R. Stone
Assistant United States Attorney
Florida Bar No. 92077
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel. 305-961-9407

# CERTIFICATE OF SERVICE

I hereby certify that on August  5th , 2023 I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

By:  /s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney