UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20340-CR-WILLIAMS(s)

UNITED STATES OF AMERICA,

vs.

MASPHAL KRY,

_____Defendant . _____/

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
SUPPLEMENTALSUBMISSION IN SUPPORT OF MOTION TO DISMISS

The United States of America hereby responds to Defendant KRY'S Supplemental Submission in Support of Motion to Dismiss the Indictment and in the Alternative, for Sanctions for Government's Destruction of and Late Disclosure of Evidence [D.E.-310] and respectfully prays this Honorable Court deny said Motion in all respects, and in support thereof would show:

### I.      Background.

Without proffering any tangible support therefore,[1] the defense argues that electronic communications between U.S. Fish & Wildlife Service Agents working on the subject case were willfully destroyed. The United States has clarified the effect of an agency-wide migration of data on its agents' phones in the Summer-Fall of 2023.  No data responsive to the Court's more recent, expansive order regarding communications

---

[1] Exhibit 3 to D.E.-310 is not, as the defense claimed in Court, "forensic evidence." Rather it is simply their extrapolation from certain materials provided to the defense. Those extrapolations are erroneous and do not substantiate the claim of willful destruction of evidence.

between agents and the cooperating witness in this case has been "lost." Only a single "archive" segment of communications, seemed to be lost as the result of the migration of data. Even that proved incorrect, as the archived material was located and provided to the defense after it was realized the Agent had archived it by the expedient of mailing it to himself and the search terms being employed to recover such communications between Special Agent Gattorno and the cooperating witness overlooked the archived file. Accordingly, neither dismissal of the Superseding Indictment, nor exclusion of the agents' testimony is warranted.

## II.    Background.

a. Resident Agent in Charge Manera.

The defense identified three sets of communications over specific time periods between RAC Manera and the CPI.[2] They then noted the absence of texts or messages during the period from March 21, 2022 through October 3, 2022; and the period from November 22, 2022 to September 21, 2023.

The first point raised by the defense addresses a Signal platform exchange referencing the forwarding of a WhatsApp. That message which appears to have originated with the CPI, was never received despite the responsive thumbs-up. A download of the Signal messages between the CPI and Agent Manera for the period May 15, 2022 through September 14, 2023 have been provided by hand-delivery to the defense this date. However, due to a technical production problem, approximately 11 pages were omitted from the production and will be

---

[2] One point raised by the defense that was correct was the issue involving the truncation of a set of text messages between the Agent and the CPI through Dec 13, 2023. Review disclosed that the missing texts consisted of seven pages of missing texts over the period December 13, 2023 to February 16, 2024. Those pages were supplied to the defense on a short series of Signal screen shots They were provided to the defense by hand delivery this date.

hand-delivered on March 15, 2024 before commencement of court. Notably these post-date defendant's arrest and largely reflect the forwarding of publications and other materials irrelevant for discovery purposes. There are several references to the White Oak site as a possible employment opportunity which repeat disclosures already provided the defense on that subject. No Signal messages have been lost or destroyed.

The second issue raised with respect to Agent Manera relates to a specific Signal message on November 8, 2022 noting that the sender had bad service and requested a text. There are text messages over the larger period of August 19, 2022 through February 16, 2024, which exceeds the period of defendant's request. These materials were provided by hand delivery on this date. Review of the provided materials amply demonstrates that no text messages between the CPI and RAC Manera were destroyed. It should be noted that overall, direct communications with RAC Manera, on any platform, fell off significantly beginning approximately three months after the CPI's arrival in the United States, when SA Gattorno began dealing with the visa and acclimation issues and RAC Manera began focusing on other aspects of the investigation, including the Indictment.

Defendant challenges RAC Manera's statement in her March 12, 2024 affidavit regarding her warning to the CPI was correct that she was having cell phone issues on or about October 21, 2022.  During that time period RAC Manera had an issue with her government phone that prompted the warning not to use Signal or WhatsApp. Communications between the CPI and RAC Manera were not lost despite the phone issue, as the CPI maintained a set of those communications which are included in today's hand-delivery of documents.

The defense erroneously focuses on a similar warning on September 25, 2023 based on a  text message to the CPI [D.E.- 310 at p. 3 and n.2] to conclude that there RAC Manera was mistaken in her affidavit. They are wrong. RAC Manera experienced a second technical problem in September 2023 which resulted in the text to the CPI alerting him to avoid WhatsApp and Signal for the time being. No communications material was lost as a result since it was subsequently recovered from the CPI's phone.

b.  Special Agent Gattorno.

Agent Gattorno joined the investigation in its later stages. His first communication with the CPI, by WhatsApp occurred on December 22, 2021, and communications on that platform continued on a periodic basis through February 16, 2024. He is prepared to be questioned and respond to any inquiries related thereto. At a certain juncture, Agent Gattorno took over primary responsibility for handling immigration and general assimilation of the CPI. This included assisting with school issues, acquisition of a driver's license and similar matters. None involved efforts to secure employment of the CPI by an NGO. These issues are also not a part of the anticipated testimony.

The defense reference four specific items in their "timeline." The first, addresses an August 24, 2022 WhatsApp which mentions the testing of a new phone. WhatsApp messages from the "old" phone address immigration support activities by Agent Gattorno. The government has previously provided extensive immigration forms and information to the defense which address the same issues. On this date, the United States provided a down-load of 193 pages, consisting of every WhatsApp message from the earlier phone, and the agent's

4

current phone, exchanged between the CPI and the Agent, to both the Court and the defendant.[3]

The second point raised by the defendant does not represent any lost data from any phone. It is a reference to a misplaced password for a data transfer site and a request for that information in order to access the site. That exchange was provided on March 10, 2024, in response to the directive to engage in a robust review of electronic data. The message chain for that date makes clear what was being discussed.

The third point highlights some screen shots sent on or about December 4-5, 2023 by the CPI of a prior conversation with the Agent regarding logistics related to documents being filed to seek employment authorities from HIS/CIS. As noted, supra, that entire set of WhatsApp messaging was provided for review by the defense this date.

The foregoing discussion completely negates the bald claim by the defense that "[t]he only explanation . . . is that SA Gattorno destroyed communications…." At this juncture the Special Agent is prepared to testify that all electronic communications between he and the CPI have been produced and none destroyed.

### III.   Discussion.

a.   The Court has previously considered the issue of allowing inquiry by the defense into the decision-making process leading to the Superseding Indictment. The issue has been broached again

---

[3] Review of the materials will reveal a very brief highlighted section that relates to the process of confirming defendant's identity. It appears to be the most relevant section of the disclosure but constitutes neither Brady or Giglio material discoverable by the defense and is not within the scope of the government's disclosure obligations under the Jencks Act because it is not relevant to the testimony of any government witness.

by the defense, The United States would incorporate it's earlier arguments against such inquiry and supplement those arguments and authorities with the following.

Courts have consistently held that matters of prosecutorial discretion, including charging decisions, are not properly raised before a jury at trial. In *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006), for example, the Sixth Circuit found the district court properly excluded evidence of selective prosecution because "the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury. *Id.* at 579. This holding relied on the reasoning in *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir. 1973), which said, "By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution."

Issues like selective prosecution or outrageous government conduct, in other words, are legal matters, not theories of defense at trial. *See United States v. Wylie*, 625 F.2d 1371, 1379 (9th Cir. 1980) (finding issue of "outrageous involvement by the government agents" is a question of law for the court and not a matter for the jury); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (per curiam) (finding issues subject to Fed. R. Crim. P. 12 are matters for the Court, not the jury); *United States v. Safavian*, 2008 WL 5255534, *1 (D.D.C. Dec. 12, 2008) (granting government's motion in limine to preclude the defense from raising issues of vindictive or selective prosecution as a defense to the jury); *United States v. Farrar*, 338 F.Supp.3d 1186, 1191-92 (precluding defense from cross examining government agents about discretionary decisions in prosecuting the case because they are legal matters not appropriately raised to a jury); *United States v. Fieger*, 2008 WL 996401, *1-*3 (E.D. Mich. Apr. 8, 2008) (precluding defendant

6

from raising evidence or argument concerning improper prosecution at trial, including cross-examination of agents about matters of prosecutorial discretion).

These issues also are not relevant to an agent's credibility or bias. *See United States v. Robinson*, 55 F.4th 390, 401 (4th Cir. 2022) ("The prosecution's decisions about how and when to prosecute Robinson don't reflect upon Purkey's (or any other law enforcement witness's) credibility. So we agree with the district court that this evidence wasn't relevant to any question before the jury."). And they're misleading and confusing to the jury. *See United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005).

A foray into the executive decision making does not advance the jury's primary function of determining guilt but rather would serve only to blur the character of the Superseding Indictment and sow confusion. Even were it to have any conceivable evidentiary value, such an inquiry would fail the test of Rules 401 and 403 of the Federal Rules of Evidence, as suggested by the rationale in *Re, supra.*

Further, to allow such inquiry would run counter to the preliminary instructions on the law already provided to the jury in this case. In those instructions, as in *every* criminal case, the jury was advised that an Indictment is not evidence of anything, but merely the vehicle calling the matter into Court.[4] To permit the inquiry suggested by statements from Defendant would, in essence, be allowing an argument and "evidence" for a jury nullification.[5] The legitimacy of the Superseding Indictment is not open to challenge on the grounds proffered by Defendant.

---

[4] Although perhaps not recited verbatim, the Court admonished the Jury in essentially the terms of the Eleventh Circuit Pattern Jury Instruction (March 2022) "First, the defendant is presumed innocent until proven guilty. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. Preliminary Instructions – Criminal Case.

[5] *See generally United States v. Funches,* 135 F.3d 1405 (11th Cir. 1998); *United States v. Trujillo,* 714 F.2d 102 (11th Cir. 1983)(Discussing generally the improper nature of nullification

b.  Exclusion of testimony is unwarranted.

Defendant's argument rests on his repeated claim on the thinnest analysis that the government destroyed evidence. In light of that claim and to put it to rest, a significant amount of time and effort has been expended to provide the message traffic of the agents on all their communication platforms despite the lack of any inherent compelling discovery obligations.

Each agent is prepared to testify regarding the facts herein. Despite the irrelevancy of the material to the underlying issues in the case. The government recognizes that in some measure the Court's directives addressed to this area were precipitated by other matters in the case and oversights on the part of the government. They have been addressed and cured.

It is well settled in the in the Eleventh Circuit that a District Court should impose the least severe sanction necessary to ensure compliance with the government's discovery obligations. The Court generally directs District Courts to consider a variety of factors including the reason for the delay in compliance, the existence or non-existence of bad faith on the part of the government, prejudice to the defendant, and a means to cure the prejudice, including continuances and recesses. *United States v. Turner*, 871 F.2d 1574 (11th Cir. 1989 ); *United States v. Euceda- Hernandez,* 768 F.2d 1307 (11th Cir. 1985 )(trial court abused discretion by excluding evidence that was produced late); *accord United States v. Burkhalter*, 735 F.2d 1327 (11th Cir. 1984).

Herein, in comparison to the volume and timeliness of discovery material provided, the belated disclosure of some relevant material does not amount to bad faith on the part of the

---

arguments, and that such arguments may not be memorialize in jury instructions).  *See also United States v. Anderson,*716 F.2d 446 (7th Cir. 1983)(Defendant cannot get jury instruction on nullification).

prosecution team. While diligent efforts to identify and supply appropriate discovery were not always successful, there is nothing to suggest willful concealment of material from the defense or any destruction of material evidence.

When directed by the Court to supplement prior disclosure efforts, in fact the government exceeded the requirements of Rule 16, controlling case law, and this Honorable Court's orders, providing material far beyond the strict bounds of discovery. As discussed, supra, there is no indication of any loss of discoverable material, and adequate time to review and employ the additional material is available. The defendant faces no demonstrable prejudice as a result of the delay.

Additionally, the Court has less draconian options, including granting reasonable continuances if needed as to specific witnesses, although given the duplicative nature of the minimally relevant material more recently produced, it does not appear that any lengthy continuance or recess is warranted.

## IV    Conclusion.

Based upon the foregoing discussion, the United States respectfully submits the defendant's claim on Motion that Agents willfully destroyed material evidence is unsupported and the agents are prepared to address any relevant cross-examination on the subject the Court may deem appropriate. In consequence, defendant's argument for draconian sanctions founded

on late provision of the electronic materials is unwarranted and the witnesses should be permitted to testify if called.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  /s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney
Florida Bar No. 0273538
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel. 305-961-9413

By:  /s/ Emily R. Stone
Assistant United States Attorney
Florida Bar No. 92077
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel. 305-961-9407